ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2010 SEP 28 AM 11:20

CLERK OF COURT

# UNITED STATES DISTRICT COURT
## For the
## Northern District Court

| | |
|---|---|
| Plaintiff name(s),<br>**Hao Hong Tran**<br>vs.<br>Defendant name(s),<br>**Texas Christian University and Brite Divinity School** | Civil Action No.<br>4-10CV-716-Y |

## INTRODUCTION

This is an action filed by Hao Hong Tran ("Plaintiff") against Texas Christian University and Brite Divinity School ("Defendants") based on Defendant's breach of contract.

## PARTIES

1. Plaintiff was at all times herein mentioned a resident of Tarrant County, Texas.

**Hao Hong Tran**
**1632 Mistletoe Blvd.**
**Fort Worth, Texas 76104**

2. Defendant was at all times herein mentioned as an institution with address of record in Tarrant County, Texas.

**Texas Christian University**
**2800 South University Dr.**
**Fort Worth, Texas 76109**

**Brite Divinity School**
**2855 South University Dr.**
**Fort Worth, Texas 76109**

## JURISDICTION

1. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(3)

## ALLEGATIONS

1. Plaintiff was a student and President of the Brite Asian Student Association at Plaintiff's institution at the time of this occurrence.
2. On or about January 20, 2008, Plaintiff wrote an electronic message to fellow students at Brite Divinity School in response to racial tension occurring at the institutions.(EXHIBIT A-1)
3. The electronic message was forwarded by one of the recipients to administrators at the institutions.
4. Defendant's own policies and procedures stated that any electronic messages are the property of the writer and should not be forwarded, changed or share without the express permission of the owner.(EXHIBIT A-2)
5. Defendant used the electronic message against Plaintiff.
6. On or about May 9, 2010, Plaintiff was suspended from Defendants institution for a duration of seven years which is according to the institution's policy, the number of years that negates Plaintiff's earned education.

## FIRST CAUSE OF ACTION

Violation of First Amendment of Free Speech

Plaintiff's should be able to freely express her opinions and statements made to members of the Brite Asian Student Association without repercussion. She was President of the association and was responding to racial tension that was occurring at Brite Divinity School and Texas Christian University. In an effort to bring solidarity within the Asian communicate at the institutions, she opened herself up to personal experiences and shared those experiences with the institution Asian student community. While other Caucasian students were making derogatory remarks about the President of Brite Divinity School, openly and with multiplicity, there had been no repercussions. Both institutions were under scrutiny for the practices of assuring equality to all racial groups by internal constituent groups, alumnae, trustees and the general community.

## SECOND CAUSE OF ACTION

Violation of Fifth Amendment of Right to Privacy

Plaintiff's electronic messages should be considered private. No party should have forwarded the message and used the message for any reason. Defendant actions in using the electronic message against Plaintiff is an invasion of Plaintiff's right of privacy and is an intrusion to Plaintiff's right to privacy.

Defendant's own policies and procedures stated that electronic messages are the property of the owner. Defendant actions in forwarding the electronic message not only violated its own institutional policy and procedures but is an intrusion to the Plaintiff's right to privacy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For judgment according to the declaratory relief sought
2. For reasonably costs and attorney's fees of this action; and
3. For such and further relief as the Court may deem proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6, Plaintiff hereby demands a jury trial on all issues triable.

Respectfully submitted,
Dated this 28th day of September, 2010

Hao Tran
Pro Se
1632 Mistletoe Blvd.
Fort Worth, Texas 76104
Phone 817.832.1173
Fax 817.230.4151

# EXHIBIT A-1

**From:** Tran, Hao
**Sent:** Sunday, January 20, 2008 7:35 PM
**To:** Byeon, Sang; KD, Naw San Dee; Kim, Kang-IL; Kim, Sung; Seo, Kyong-Sook; Xie, Yizong; Yeh, Ching-An; Appileyil, Varghese; Kim, Ji-Myung; Lee, Jae-Hee; Byrne, Jeanne; Jiang, Lian; Tran, Hao; Park, Samuel
**Cc:** Lee, Timothy; Kang, Namsoon; Thomas, Rodney; Saucedo, Joel; Cole, Cynthia; Park, Samuel
**Subject:** BASA Spring Events

Dear BASA friends,

Happy New Year and Welcome Back! A new semester and the return of old friends and addition of new students brings us together. BASA is the Asian student organization in Brite Dvinity School, Texas Christian University in Fort Worth, TX. The purpose of BASA is to provide fellowship, learning, and advocacy opportunities for its members, and to promote understanding of Asian Christianity and culture in the Brite community. There are several events to put on your calendar..

**January 24 Teach In on Racism, 9am-4pm**

**February 8 (tentative date, more details coming) Asian New Year Celebration at Liebrock Village**

**March 17-18 Brite Asian Studies Program featuring guest speaker Dr. Peter Phan, Ellacuria Chair of Catholic Social Thought, Georgetown University, Washington, DC.**

**All of these events hope to achieve the mission of our student organization and be a way for students to engage in meaningful learning experience of Asian Christianity and culture.**

A few words on the Teach In to provide some insight and preface to the event. Responding to concerns regarding racism within the Brite community, in November 2007 a Task Force, composed of staff, faculty and students, was formed to plan and execute a Teach In with a goal to provide an opportunity for the community to have a meaningful discussion on racism. Guest speakers from other educational institutions have been invited to speak of their own experience regarding racism and Brite ethnic groups will divided up into their respective groups to vent concerns and brainstorm ideas.

Earlier last week I was asked to support a boycott on the event as the administration, who have previously been presented with concerns, have not responded in a way that is reconcilatory but rather with apathy. My response was rather a personal one and one that I thought was the right choice. This was my response to all the leaders of BSU, BSA and BLA.

*Dear All,*

*My response comes from my heart and only represent me as a person. I have had my own conflict with Brite administration. This has caused many months of internal turmoil and struggle not only with my personal convictions but also my spiritual and theological beliefs. I have remained silent for fear of repercussions from administration that already has revealed itself in this past year. But I can no longer and beyond my own suffering there are many others that are being affected that I must consider at this time.*

*For most of my life I was not a Christian. Having grown up Buddhist, I do believe in a Higher Being. One that loves all and seeks to raise us to a better life by achieving honesty, a good work ethic and giving to others. I entered seminary school in order to deepen my understanding of God and his role for this world as I felt a calling for this tremendously moving faith. My cultural influence has been in the country that fought communism and assimilating in a world that values democracy has inspired me to speak up for those who are voiceless. As a woman, it is unheard of in my home country so I had many fears.*

*Several years ago and again in the past year, I had filed a complaint with Brite in regards to my former husband Larry Brown who is in administration at Brite. He accessed, intercepted and used my personal e-mails from my TCU student account for personal gain. I reported this activity and provided all the documentation to TCU and Brite. They have done nothing, refuse to do nothing and accept no responsibility. In addition, they have labeled me as "wild, crazy", limited by e-mail access, and placed security cameras in Weatherly Hall because I have been labeled as a "threat" without ever meeting to discuss any of this with me, which I have requested several times. I don't recall in any of my correspondence, which were all reviewed by my legal counsel, to Dean Ramsey or Dr. Williams that I have been nothing but intentionally respectful and cordial. The student handbook, the Brite covenant specifically details our responsibility in this community. It specifically addresses that the student, staff, faculty electronic communication and the author is the owner of such communication but yet there has not been any recognition that the electronic communication that my former husband accessed, intercepted and was not in any way intended for him or his use in order to decharacterize me in court to unsuccessfully gain custody of our daughters.*

*Mr. Brown administrative role in the advancement development and technology affords him access to student, prospective donor, trustees, and alunmae personal and financial accounts including property ownership, business enterprises and financial wealth. The right to privacy is a a constitutional right under the Fourteeth Amendment. This matter against Brite will be heard in federal court later this year.*

*It is not my faith in God that is shaken but my faith in the people that lead and guide this institution. My former husband past heritage that he proudly honors is being the pedigree of a Confederate south patriarch belonging to the Ku Klux Klan. He has a tremendous hatred for non-white people as he has demonstrated through the years that I remained with him. My children are now victims of such hatred as he has had with me. The more I retained my own heritage, the more I was hated. The Brite administration supporting such behavior makes them equally responsible for this hatred and equally acceptance of white supremist syndrome.*

*This instituion, in my own opinion has instilled racist tones and I will not and cannot accept this behavior. As such, the "teach-in" they have proposed does nothing but to lend lip service to a behavior that will not change until the administration allows for such thinking to continue. My concurrence and support of the "teach-in" protest, it is only my personal conviction.*

*My role as BASA president is to raise the voices of our Asian community and bring honor to the Asian studies program. My own personal opinions will not diminish that role*

*Yours in Christ,*

*Hao*

This,for me, was a difficult task to write such words and speak out. I had no idea that others were experiencing such treatment and when it was presented to me, I was angry and saddened, not for myself, but for the others that are being affected by this treatment. But I have come to realize through prayer and fierce internal dissection of my own emotions that not participating would not be in the best interest for the community in which I believe in. Therefore, I rescind my support of the boycott.

The good people of the Task Force have spend many hours creating a venue for the Brite community to voice their concerns. Not supporting their efforts with the Teach In would undermine any progress that we hope to achieve in eradicating racism at Brite. We, as Asians, belong to this community and by not participating to be a tool of change, at any level, would only delinenate ourselves different and exclusive. We can say we are Asian, Black, White or Latino, but in the end, we are One. One with the community and with God. Without this consideration, we will only revert to our human tendencies of ethnic seperation. So my friends, I encourage you to participate, engage, look deeply into yourselves to be on the cusp of change for a better, free thinking, inclusive and Christian environment.

In celebration of the life of Martin Luther King, Jr. this week, I am reminded of one of his quotes, "The ultimate

measure of a man is not where he stands in moments of comfort and convenience, but where he stands in times of challenge and controversy" My friends, I commit to you that I will not run away from these challenges It will be difficult, uncomfortable, and challenging. But let us participate in solidarity and be agents of change to achieve social justice and be One with our Christian community.

If your schedule allows, I encourage you to attend and fully engage yourselves in the Teach In. BASA will meet at 300pm in Weatherly Hall as a group to reflect on these concerns and the events of the day and join in the closing worship at 3:30pm.

Love and Peace to All,

Hao

# EXHIBIT A-2

# BRITE

## DIVINITY SCHOOL

# STUDENT HANDBOOK

## OF GENERAL INFORMATION

## 2007-08

This student handbook is written to enable you to become familiar with a number of policies and procedures at Brite Divinity School. However, it is not all inclusive and is subject to change when deemed in the best interest of Brite Divinity School within established procedures. This handbook is for information purposes only and does not constitute a contract between any student and Brite Divinity School.

| | | |
|---|---|---|
| D. Newell Williams, President | 817/257-7231 | Room 128 |
| Nancy J. Ramsay, Dean | 817/257-7577 | Room 104 |
| Jeffrey Williams, Associate Dean for Academic Affairs | 817/257-7587 | Room 20B |
| Ed McMahon, Assistant Dean for Advanced Programs | 817/257-5662 | Room 15F |
| Bryan G. Feille, Associate Dean of Student Affairs | 817/257-7591 | Room 20A |

# STUDENT HANDBOOK

## Table of Contents


1.0 Mission Statement ..... 1

2.0 Organization, Administrative Governance, and Corporate Relationships ..... 1
- 2.1 Board of Trustees ..... 1
- 2.2 Executive, Academic, and Finance Officers ..... 2
- 2.3 The Permanent Faculty ..... 2
- 2.4 The Administrative Staff ..... 2
- 2.5 Corporate Relationships ..... 2
  - 2.5.1 Affiliation with Texas Christian University ..... 2
  - 2.5.2 Accreditation ..... 2
  - 2.5.3 Church Relatedness ..... 3

3.0 General Policies and Procedures for Community Life ..... 4
- 3.1 Student Rights and Responsibilities ..... 4
- 3.2 Standards of Professional Behavior ..... 5
- 3.3 Policy and Procedures for Students with Disabilities ..... 6
- 3.4 Equal Employment Opportunity and Harassment Policy ..... 6
- 3.5 Inclusive Language ..... 16
- 3.6 Computing Resources Policy ..... 16
- 3.7 Graduate Assistantships ..... 20
- 3.8 Parking and Traffic Regulations ..... 21
- 3.9 Safety Policy ..... 21
- 3.10 Firearms and Deadly Weapons Policy ..... 22
- 3.11 Drug/Alcohol Policy ..... 22
- 3.12 Student Housing Policy ..... 22
- 3.13 Open Door and Grievance Policy Pertaining to Community Affairs for Students ..... 23
- 3.14 General Policies and Procedures for Community Life ..... 24
- 3.15 Code of Student Conduct ..... 25

4.0 Community Life and Governance ..... 35
- 4.1 Committee Structure ..... 35
- 4.2 Student Government (Brite Student Association) ..... 37
- 4.3 Student Interest Groups ..... 37
- 4.4 Chapel ..... 37
- 4.5 Fall Convocation ..... 38
- 4.6 Spring Luncheon and Book Award Ceremony ..... 38
- 4.7 Teaching Awards ..... 38
- 4.8 Ministers Week ..... 38
- 4.9 Brite Series ..... 38

5.0 Academic Processes and Procedures ..... 38
- 5.1 Degree Programs ..... 38
- 5.2 Orientation Requirements ..... 58
- 5.3 Advisers, Program Responsibility, and Advance Registration ..... 58
  - 5.3.1 MY.TCU.EDU ..... 58
- 5.4 Family Educational Rights and Privacy Act ..... 61
- 5.5 Travel Courses ..... 62
- 5.6 Transfer Credit ..... 62
- 5.7 Simultaneous Enrollment in Other Degree (or Certification) Programs ..... 62

5.8 Grades ... 63
- 5.8.1 Pass/No Credit ... 63
- 5.8.2 Repeating a Course ... 63
- 5.8.3 Grade Appeals ... 63
- 5.8.4 Grade Appeals Procedure ... 64
- 5.8.5 Incompletes ... 65
- 5.8.6 Policy and Procedure in the Granting and Removal of the "I" ... 65
- 5.8.7 Grade Reports ... 66
- 5.8.8 Dean's List ... 66
- 5.8.9 Final Examinations ... 66

5.9 Transcripts of Academic Records ... 67
5.10 School Terms ... 67
5.11 First Year Schedule ... 67
5.12 Normal Student Academic Load ... 67
- 5.12.1 Course Prerequisite Waiver ... 68
- 5.12.2 Advanced Standing ... 68
- 5.12.3 Change in Program Requirements ... 68
- 5.12.4 Courses Taken Outside Brite and TCU ... 68
- 5.12.5 M.Div. Concentrations ... 69
- 5.12.6 Course Numbers ... 69
- 5.12.7 Course Offerings ... 69
- 5.12.8 Course Prospectus ... 69
- 5.12.9 Independent Study Courses ... 69
- 5.12.10 Guidelines for Formal Student Papers ... 70
- 5.12.11 Audit Enrollment ... 70
- 5.12.12 D.Min. Specific Courses ... 71
- 5.12.13 Ph.D. Specific Courses ... 71

5.13 Academic Conduct Policy ... 71
5.14 Academic Probation and Academic Dismissal ... 76
5.15 Policy on Disruptive Behavior, Lack of Academic Progress, and/or Misconduct ... 77
5.16 Change of Degree Program ... 78
5.17 Student-Initiated Withdrawal Policy ... 79
5.18 Transfer Credit and Transfer of Credit Hours ... 80
5.19 Readmitted Students and Credit Hours ... 81
5.20 Instructional Attendance Policy ... 81
5.21 Library Conduct Policy ... 82
5.22 Recommendations Concerning Manuscript Preparation and Computer Usage ... 82
5.23 Financial Arrangements ... 83
5.24 Payment Procedures ... 87
- 5.24.1 Payment Options ... 88
- 5.24.2 Brite Tuition Grants ... 88
- 5.24.3 Brite Housing Rent Charges ... 88
- 5.24.4 Finance Charges ... 88
- 5.24.5 Due Dates ... 88
- 5.24.6 Methods of Payment ... 88
- 5.24.7 Returned Check Policy ... 88
- 5.24.8 General Information ... 88
- 5.24.9 Billing Errors or Inquiries ... 89

5.25 Tape Recorders ... 89
5.26 Cell Phones/Pagers ... 90
5.27 Computer Lab ... 90
5.28 Student Photocopier ... 90
5.29 Class Cancellations ... 90
5.30 Textbooks ... 90
5.31 Hooding Ceremony for Graduates ... 90

6.0 Miscellaneous Services, Policies, and Information ..... 91
6.1 Health Center ..... 91
6.2 Counseling Services ..... 91
6.3 TCU Writing Center ..... 91
6.4 Inclement Weather ..... 92
6.5 Lost and Found ..... 92
6.6 Personal Data and Changes in Data ..... 92
6.7 Emergency Messages ..... 92
6.8 TCU Blood Bank ..... 92
6.9 Conference Services ..... 93
6.10 Building Use Fees ..... 93
6.11 Mailing and Post Office Services ..... 94
6.12 General Fire Safety ..... 94
6.13 Severe Storm and Tornado Procedures ..... 95
6.14 Bomb Threats ..... 96
6.15 Energy Conservation Policy ..... 96
6.16 Recycling ..... 96

Appendix ..... 97
A Courses of Instruction ..... 98
B Tape-Recording Agreement ..... 120
C Advanced Standing Form ..... 121
D Course Prerequisite Waiver Form ..... 122
E Advance Registration Approval Form (TCU Course Approval) ..... 123
F Constitution of the Brite Divinity School Student Association ..... 124
G Student Organization Application Form ..... 130
H Faculty Advisor Letter of Agreement ..... 132
I Student Organization Sample Constitution ..... 133

violation of the Brite Divinity School Harassment Policy. It is a breach of professional ethics, and therefore prohibited, for a faculty or staff member to initiate or to acquiesce to a sexual relationship with a student at Brite Divinity School or person under direct or indirect supervision of that faculty or staff member. The above applies even when both parties appear to have consented to the relationship.

(2) In considering and investigating allegations that an employee or faculty member has sexually harassed a student, the investigation shall proceed from the presumption that the employee's or faculty member's conduct was unwelcome. Sexual relationships between faculty members and students or between superior and subordinate employees can undermine the atmosphere of trust essential to the educational process and the employment relationship. No person involved in a consensual relationship shall have subsequent responsibility for evaluating the employment and/or academic performance or for making decisions regarding the promotion, tenure, or compensation of the other party to the relationship.

### 3.5 Inclusive Language

Acknowledging the power of language to create as well as to describe ideas and attitudes, Brite Divinity School recognizes that language has often been used to perpetuate discriminatory biases against and stereotypes of persons and groups. The Divinity School is committed to the proclamation that God's grace is extended equally to all persons. In our effort to promote the Gospel of Jesus Christ, we believe that language itself can become a witness. The Divinity School, therefore, urges students, faculty and staff to exercise responsible use of inclusive language when referring to gender, race, ethnicity, age or physical ability.

Students should consult the "Discussion Guide for Inclusive Language at Brite Divinity School," available in the Office of the Associate Dean for Academic Affairs.

### 3.6 Computing Resources Policy

This policy is applicable to all Brite students, faculty and staff and to others granted use of Brite or University computing resources as defined in this policy. This policy refers to all Brite or University computing resources, whether individually controlled or shared, stand-alone or net-worked. It applies to all computer and computer communication facilities owned, leased, operated or contracted by Brite or the University. This includes word processing facilities, personal computers, networks, workstations, mainframes, minicomputers, and associated peripherals and software, regardless of whether used for administration, research, teaching or other purposes ("collectively, university computing resources"). It is the responsibility of every person who uses university computing resources to read and abide by these policies and related computer resource policies defined on the *TCU Information Security and Privacy Policy and Procedures* website at http://security.tcu.edu.

*Regulations Regarding the Use Of Computers And Networks*

Individuals provided access to Brite or University computing resources assume responsibility for their appropriate use. The Divinity School and University expect all such persons to be careful, honest, responsible, and civil in the use of computers and networks. Individuals using wide-area networks (such as the Internet) to communicate with individuals or to connect to computers at other institutions are expected to abide by the rules for the remote systems and networks as well as those for Brite or TCU's systems. Individuals authorized access to University computing resources are responsible for actions resulting from improper use or failure to protect those

resources including remote access or use by another person. In addition to violations of University rules, certain computer misconduct is prohibited under federal and state laws, and is, therefore, subject to criminal penalties. Such misconduct includes, without limitation, the following:

1. Using university computing resources for illegal activity, for material that publicly advocates illegal activity, or for discussion of illegal activities with the intent to commit them.

2. Participating in unauthorized reproduction, storage, or distribution of copyrighted software or other materials (e.g., text, audio, graphics, video) or illegally obtained software.

3. Accessing, copying, transporting (to another person or site), modifying, or destroying programs, records, or data belonging to the University or another user without authorization, whether such data is in transit or storage.

4. Sharing an account, providing passwords to another person, using another person's password or e-mail address, attempting to breach the security of another user's account, or depriving another user of access to the University's computer resources.

5. Using university computing resources to harass, defame, abuse, or threaten others.

6. Using university computing resources for any unauthorized non-University related activity.

7. Falsely obtaining electronic services or data without payment of required charges.

8. Connecting specialized network devices such as routers, firewalls, network address translators (NAT), switches, and wireless access points without prior approval.

9. Failing to register all networked computers with Information Services or not using assigned IP addresses.

*Privacy of Information*

Information stored on a computer system or sent electronically over a network is the property of the individual who created it. Examination of that information without authorization from the owner is a violation of the owner's rights to control his or her own property. Systems administrators, however, may gain access to user's files when it is necessary to maintain or prevent damage to systems or to ensure compliance with other University rules.

Computer systems and networks provide mechanisms for the protection of private information from examination. These mechanisms are necessarily imperfect and any attempt to circumvent them in order to gain unauthorized access to private information (including both stored computer files and messages transmitted over network) will be treated as a violation of privacy and may subject a violator to disciplinary action.

In general, information that the owner would reasonably regard as private must be treated as private by other users. Examples include the contents of electronic mail boxes, the private file storage areas of individual users, and information stored in other areas that are not public. That measures have not been taken to protect such information does not make it permissible for others to inspect it.

On shared and networked computer systems certain information about users and their activities is visible to others. Users are cautioned that certain accounting and directory information (for example, user names and electronic mail addresses), certain records of file names and executed commands, and information stored in public areas, are not private. Nonetheless, such unsecured information about other users must not be manipulated in ways that they might reasonably find

intrusive; for example, eavesdropping by computer and systematic monitoring of the behavior of others are likely to be considered invasions of privacy that would be cause for disciplinary action.

*Use of Facilities*

Computer and network facilities are provided to authorized persons for their personal use. These facilities have tangible value. Consequently, attempts to circumvent accounting systems, to use the computer accounts of others, or to duplicate, use, or distribute software without authorization, will be treated as forms of attempted theft.

A user may not attempt to damage or degrade the performance of Brite or TCU computers and networks and should not disrupt the work of other users. Each individual user assumes individual responsibility for the use of his or her accounts. Consequently, users may not disclose their passwords or otherwise make Brite or TCU facilities available to unauthorized individuals (including family or friends). The use of Brite or TCU computers and networks for commercial purposes without authorization is prohibited.

*Electronic Communication*

(Brite neither sanctions nor censors individual expression of opinion on its systems.) The same standards of behavior, however, are expected in the use of electronic mail as in the use of telephones and written and oral communication. Therefore, electronic mail, like telephone messages, must be neither obscene nor harassing. Similarly, messages must not misrepresent the identity of the sender. Messages should not be sent as "chain letters" or "broadcast" indiscriminately. Users must take the same care in drafting an email as they would for any other communication. Confidential information should not be sent via email.

*Plagiarism*

Computer programs/other electronic data and documents should be regarded as individual creations and subject to the same standards of misrepresentation of copied work.

*Security and Privacy*

1. Users understand that timesharing and network-based system activity are automatically logged on a continuous basis. These logs do not include private user text, mail contents, or personal data, but do include a record of user processes that may be examined by authorized system administrators.

2. TCU considers user accounts to be the private property of those who have opened them, and as a result will never ask users to reveal their passwords. However, users who request assistance from Computer Services give the staff implicit permission to view specific data in their accounts that is necessary to investigate, diagnose, or correct the problem.

*Use of Facilities and the Network*

1. Physical theft, rearrangement, or damage to any University computer or network equipment, facilities, or property is strictly prohibited, and will be reported to the police. This includes all public computer labs, network hubs, wiring, and links. Users may not "plug-in" personal computers or peripheral devices in public computer labs or onto the University Network without prior authorization.

2. Data packets on the network are like voice signals on a telephone line. Just as phone taps are prohibited, so too are attempts to monitor, analyze, or tamper with network data packets.

*Electronic Communication and Bulletin Boards*

1. TCU neither sanctions nor censors individual expressions of opinion on its systems. However, obscene or harassing electronic communication (e.g., electronic mail) is prohibited, as are computer messages that actively target individuals in a threatening manner.

2. Users who make use of bulletin board systems and other network communication utilities (e.g., Gopher, Newsgroups, the Web, list servers) do so voluntarily, with the understanding that they may encounter material they deem offensive. Students who subscribe, post messages, or simply browse through such utilities must abide by the rules governing each in addition to TCU's rules governing computing on campus.

3. Although commercial work is prohibited on TCU systems and networks, some bulletin board systems (BBS) available over the network do make provisions for posting job opportunities and personal items for sale. Such activity is permissible within the constraints of policies specific to each BBS. The staff of Information Services takes no responsibility for any fraud or misrepresentation users may encounter (caveat emptor).

*Cases of Misconduct*

1. The University's designated computer security officer shall be the primary contact for the interpretation, enforcement and monitoring of this policy and the resolution of problems concerning it. Any legal issues concerning the policy shall be referred to the appropriate officials for advice.

2. If system administrators have persuasive evidence of misuse by a user of University computing resources, the University's designated computer security officer shall have authority to inspect files, diskettes, tapes, CDs and/or other computer-accessible storage media.

3. By accessing and using the university's computing resources, each system user expressly consents to and acknowledges the University's right, when necessary as a function of responsible system management:

   a) to monitor any and all aspects of university computing resources (including, but not limited to, individual user login sessions to determine if a user is acting in violation of University policies or the law);

   b) to inspect all electronic files and other electronically recorded information within the university's computing resources; and

   c) to intercept, access, disclose and use electronic communications of any user, whether in transit or storage.

4. Only the University's designated computer security officer can authorize the monitoring, inspection, interceptions, access, disclosure or use of such electronic data (including, without limitation, electronic mail) when there is reasonable cause to suspect improper use of university computing resources.

5. Whenever a case of computer misconduct is suspected or reported, TCU reserves the right to deny system access to any user who violates the rules set forth in this statement. This includes the ability to terminate processes that threaten system security or performance.

6. Students will be held to the same standard of conduct (in electronic communication) with faculty, officers and staff of the University. All cases of misconduct will be reported to the appropriate authority for disciplinary action.

*Student Rights and Responsibilities*

1. TCU and Brite must ensure that academic work takes precedence at all times over other computing activities in its facilities. In situations of high user demand which may strain available computer resources, TCU reserves the right to restrict (e.g., to specific times of day) or prohibit computer activities such as game playing.

2. Mutual cooperation is essential to sustain the free flow of information fostered by campus computers and networks while protecting the integrity and privacy of personal data. Since computer systems and networks are imperfect, users are strongly requested to report any bugs or security holes to the staff of Information Services. Likewise, users should not disseminate to others any information that serves to jeopardize, circumvent, or degrade system security or integrity. Users should also be aware that certain types of computer misuse (including indirect participation) are illegal under federal and state law.

3. Users recognize that systems and networks are imperfect and waive any responsibility for lost work or time that may arise from their use. TCU and Brite cannot compensate users for degradation or loss of personal data, software, or hardware as a result of their use of University- or Brite-owned systems or networks, or as a result of assistance they may seek from Information Services staff.

4. Users of University or Divinity School computing resources are responsible for insuring proper backup/preservation of all their data.

*Copyright Infringements*

Unauthorized duplication of copyrighted information or data and software packages is a direct infringement under federal copyright law, 17 U.S.C. 101, et seq.

The University and Divinity School support strict compliance with the federal statutes regarding copyright infringement. It is illegal to make, use, or pass along unauthorized copies of software, graphics, music or any other creative art or intellectual property for multimedia projects or any other use.

This includes the copying of software programs, etc., required in a class. Anyone who engages in illegal copying shall be subject to disciplinary action under the University's and Divinity School's policies and, in addition, shall be subject to criminal prosecution under state and federal statutes.

This policy was developed, among other things, to ensure that both the University and Divinity School, their students, faculty and staff maintain legal and ethical standards regarding use of copyrighted materials.

### 3.7 Graduate Assistantships

As a part of the Financial Aid package, many students are given a Graduate Assistantship, and assigned to work with one or more faculty or staff members. Each faculty member may request a student assistant for the fall and spring semesters of each year. Assistants enrolled in Brite's M.Div., M.T.S. or M.A.C.S. programs receive a $500 stipend per semester while students in the ThM, DMin or PhD programs receive a $750 stipend per semester. The stipend is paid out over the course of the semester's eight pay periods. Five hours of work per week is expected. Should a faculty member's schedule for student hours vary significantly from the normal routine, he or she should work out an agreement with his or her assistant in writing.

JS 44 (Rev. 12/07) ORIGINAL

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** Hao Hong Tran, 1632 Mistletoe Blvd., Ft Worth, Tx 76104

**DEFENDANTS** Texas Christian University and Brite Divinity School, 2800 S. University Dr, Ft Worth, TX 76109

(b) County of Residence of First Listed Plaintiff: Tarrant
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Tarrant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

4-10CV-716-Y

RECEIVED, 2010 SEP 28, CLERK OF COURT, U.S. DISTRICT COURT, NORTHERN DIST. OF TX, FORT WORTH

(c) Attorney's (Firm Name, Address, and Telephone Number): Pro Se

Attorneys (If Known):

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☒ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): US Constitution

Brief description of cause: First Amendment / Fifth Amendment violation

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $86,000

CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ________ DOCKET NUMBER ________

DATE: September 28, 2010

SIGNATURE OF ATTORNEY OF RECORD: [signature]

FOR OFFICE USE ONLY

RECEIPT # FW012407 AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________